**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Tel: (619) 696-9006
Fax: (619) 564-6665

**THE ELLIOT LAW FIRM**
DAVID ELLIOT (270381)
8033 Linda Vista Road, Ste. 200
San Diego, CA 92111
Telephone:  (619) 468-4865
***Attorneys for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

WARREN GROSS and DEBORAH LEVIN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

VILORE FOODS COMPANY, INC.,

Defendants.

Case No:  '20 CV 0894 DMS JLB

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**

1. **CONSUMERS LEGAL REMEDIES ACT,** CAL. CAL. CIV. CODE §§1750 *et seq.*
2. **UNFAIR COMPETITION LAW,** CAL. BUS. & PROF. CODE §§17200 *et seq.*
3. **FALSE ADVERTISING LAW,** CAL. BUS. & PROF. CODE §§17500 *et seq.*
4. **BREACH OF EXPRESS WARRANTY**
5. **BREACH OF IMPLIED WARRANTY**
6. **NEGLIGENT MISREPRESENTATION**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

I.    JURISDICTION AND VENUE ........................................................................1

II.    NATURE OF THE ACTION .........................................................................2

III.    PARTIES ........................................................................................................3

IV.    FACTUAL ALLEGATIONS ..........................................................................3

Defendant Does Not Disclose That the Products are Artificially Flavored.........................3

Defendant's Competitors Label Their Products Lawfully.................................................8

Plaintiff's Purchases of the Product ...............................................................................9

V.    DELAYED DISCOVERY ...........................................................................11

VI.    CLASS ACTION ALLEGATIONS .............................................................12

VII.    CAUSES OF ACTION ................................................................................14

    First Cause of Action: Violation of the CLRA .............................................14

    Second Cause of Action: Violation of the UCL, Unlawful Prong .........................15

    Third Cause of Action: Violation of the UCL, Unfair Prong................................16

    Fourth Cause of Action: Violation of False Advertising Law ...............................19

    Fifth Cause of Action: Breach of Express Warranty ...........................................20

    Sixth Cause of Action:  Breach of Implied Warranty ..........................................20

    Seventh Cause of Action:  Negligent Misrepresentation.......................................22

VIII.    PRAYER FOR RELIEF ..............................................................................23

IX.    JURY DEMAND .........................................................................................24

CLASS ACTION COMPLAINT

Warren Gross and Deborah Levin, ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel, hereby bring this action against Vilore Foods Company, Inc., ("Vilore" or Defendant), and upon information and belief and investigation of counsel, allege as follows:

## I.   <u>JURISDICTION AND VENUE</u>

1.     Plaintiffs bring this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Defendant is a citizen of a state different from that of a plaintiff, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs. The amount in controversy, exclusive of interest, costs, and attorneys' fees, exceeds the minimum jurisdictional amount for this Court and minimal diversity exists. The Court has jurisdiction over this action pursuant to 28 U.S. Code § 1332(d).

2.     This Court has both general and specific personal jurisdiction over Defendant.

3.     The Court has personal jurisdiction over Defendant because the company has affirmatively established and maintained contacts with the State of California and is registered to do business in California.

4.     This Court further has specific personal jurisdiction arising from Defendant's decision to distribute and sell the Product in California.

5.     Defendant has sufficient minimum contacts with this State and sufficiently avail themselves of the markets of this State through the promotion, sales, and marketing of the Product within the State to render the exercise of jurisdiction by this Court reasonable.

6.     Venue is proper in this County because Defendant conducts business here, engages in substantial transactions in this County, and many of the transactions complained of herein occurred in this County including specifically the transactions between Plaintiff Gross  and Defendant and many of the transactions between Defendant and the Class.

## II.    NATURE OF THE ACTION

7.    This is a nationwide consumer class action for violation of state consumer protection laws with a California sub-class for violation of California law.

8.    Defendant distributes, advertises, markets, and sells a variety of juices and juice-based beverage products, including juice-based beverage products labeled "Guava Nectar", "Apricot Nectar", and "Peach Nectar" (the "Products").

9.    These Products, which are labeled and marketed under the brand name "Kern's," are all misbranded and falsely advertised.

10.    The Kern's brand is owned in the United States by Grupo Jumex, S.A. de C.V. ("Jumex"), a Mexico corporate entity.

11.    The Products are packaged in Mexico and imported to the United States.

12.    Under U.S. law, every food product imported into the U.S. must identify on the product's package the full legal name and address of <u>either</u> the product manufacturer <u>or</u> the U.S. distributor for consumer contact and liability purposes.

13.    Vilore, a Texas corporation, is identified on the Product labels as the U.S. distributor.

14.    The Products' labeling is false and misleading and violated FDA regulations.

15.    The Products are labeled as if they are flavored only with natural ingredients when the Products in fact contain undisclosed artificial flavors in violation of state and federal law.

16.    The Products are misbranded under federal law as well as California and other states' laws.

17.    The distribution of misbranded products in interstate commerce violates federal law, 21 U.S.C. § 331, and corresponding state consumer protection laws.

18.    Vilore is liable under U.S. law for distributing the misbranded Products.

19.    Plaintiffs, who were deceived by Defendant's unlawful conduct, purchased the Products in California, and were damaged thereby, bring this action on their own

CLASS ACTION COMPLAINT

behalf and on behalf of California and other states' consumers to remedy Defendant's unlawful acts.

20.    On behalf of the Class and sub-class as defined herein, Plaintiffs seek an order compelling Defendant to, *inter alia*: (1) cease distributing, advertising and selling the Products in violation of U.S. and California and other states' consumer protection law; (2) re-label or recall all existing deceptively packaged Products; (3) conduct a corrective advertising campaign to fully inform California and other states' consumers; (4) award Plaintiffs and other Class-members restitution, actual damages, and punitive damages; and (5) pay all costs of suit, expenses, and attorney fees.

### III.    PARTIES

21.    Defendant Vilore Foods Company ("Vilore") is a Texas Corporation with its principal place of business at 3838 Medical Drive, San Antonio, Texas.

22.    Vilore is registered with the California Secretary of State to do business in California under entity number C1944592.

23.    Vilore is the designated U.S. distributor and liable entity for the Products.

24.    Defendant advertises, markets, distributes, and sells the Products in California and throughout the United States.

25.    Plaintiff Warren Gross ("Gross") is a resident and citizen of Pima County, Arizona. Gross purchased one or more of the Products multiple times in San Diego County, California for personal and household consumption.

26.    Plaintiff Deborah Levin ("Levin"; collectively with Gross, "Plaintiffs") is a resident and citizen of Santa Monica, California. Levin purchased the Products multiple times since 2014 in California for personal and household consumption.

### IV.    FACTUAL ALLEGATIONS

**Defendant Does Not Disclose That the Products are Artificially Flavored.**

27.    The image below [overleaf] is a true and accurate reproduction of the front

3

1 labels of two of the Products during the proposed class period.[1]



28.    The Mango Nectar product label, for example, shows a pictorial representation of ripe fresh mangos. The Apricot Nectar product label shows a pictorial representation of ripe fresh apricots.

29.    The labeled names, "Mango" and "Apricot" along with these pictorial representations, under U.S. and California law inform the consumer that the Products consist exclusively of and are flavored only with natural juices.

30.    Both labels further advertise that the Product is "100% Natural."

31.    Both Products, however, contain a chemical identified as "malic acid."

32.    The "malic acid" that is added to the Products is a synthetic chemical that is used to make manufactured food products taste like real fruit.

33.    The Product labels violate California and other state law in multiple regards.

34.    California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Saf.

---

[1] http://kerns.com, as of 2017. The manufacturer apparently has since deleted "100% Natural" on the retail can labels.

CLASS ACTION COMPLAINT

Code §109875 et seq, for example, incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act. Any act or omission that would violate an FDCA regulation necessarily therefore violates California's Sherman Law.

35. Numerous other states have similar consumer protection laws.

36. The Products violate the federal FDCA, and therefore violate these state laws, in multiple ways.

37. First, because each Product contains additional flavoring ingredients that simulate and reinforce the characterizing flavor, the front label is required by law to disclose those additional flavors rather than misleadingly suggest that the Product is flavored only by the labeled natural juices. Cal. Health & Saf. Code §109875 et seq.

38. Second, the Product ingredient list violates Federal and state law because it misleadingly identifies the malic acid ingredient only as generic "malic acid" instead of using the specific, non-generic name of the ingredient. *See* 21 CFR 101.4(a)(1).

39. Even more deceptive, however, is the fact that the Products contain undisclosed artificial flavoring made from petrochemicals. Defendant conceals this fact from consumers.

40. The manufacturer adds an industrial chemical called d-l malic acid,[2] in the form of a racemic mixture of d- and l- isomers, to flavor the Products and make them taste like fresh fruit.

41. This 'malic acid' is not naturally-occurring but is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

42. Both the natural and unnatural forms of malic acid are considered GRAS (generally recognized as safe) for use as flavorings; the d-malic acid form, however, has not been extensively studied for its health effects in human beings.

---

[2] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

CLASS ACTION COMPLAINT

43. Both forms of malic acid confer a "tart, fruity" flavor to food products.[3]

44. The manufacturer uses this artificial petrochemical, d-l malic acid, in its Products but Defendant pretends otherwise, conflating the natural and the artificial flavorings and deceiving consumers.

45. Because it contains artificial flavor, both federal and state law require the Products to display both front- and back-label disclosures to inform consumers that they are artificially flavored. 21 CFR 101.22.

46. They have neither.

47. The labels of some of the Products during the proposed class period, in fact, claimed the Products are "***100% Natural***".

48. California law, incorporating and identically mirroring U.S. Food, Drug, and Cosmetic Act regulations by reference, requires that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. 102.5(a).

49. Under FDA regulations, a recognizable primary flavor identified on the front label of a food Products are referred to as a "characterizing flavor". 21 CFR 101.22.

50. FDA regulations and California law establish that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor". 21 C.F.R. 101.22(i).

51. "Mango," "Apricot," and "Guava" are primary recognizable flavors identified on Product front labels. These are all therefore characterizing flavors.

52. If a product's characterizing flavor is not created exclusively by the characterizing flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either or both of natural or artificial flavorings. If

---

[3] https://thechemco.com/chemical/malic-acid/; visited 04/12/17.

CLASS ACTION COMPLAINT

any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i) (3), (4).

53.    A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . .  and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c).

54.    Such statements must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id*.

55.    Under these regulations, Defendant, before distributing the Products in U.S. commerce, was required to place prominently on the Products' front labels a notice sufficient to allow consumers to understand that the Products contained additional flavoring ingredients and artificial flavorings.

56.    Defendant failed to do so, deceiving consumers and violating federal and state law.

57.    Accordingly, Plaintiffs were unaware that the Products contained artificial flavoring when they purchased them.

58.    When purchasing the Products, Plaintiffs were seeking a product of particular qualities that were flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring.

59.    Plaintiffs are not alone in these purchasing preferences. As reported in Forbes Magazine, 88% of consumers polled recently indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers]—from Generation Z to

Baby Boomers—say they would pay more" for such products, specifically including foods with no artificial flavors.[4]

60.    California's Health & Safety Code specifically states that "Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact." Cal. Health & Saf. Code §110740.

61.    California law required Defendant to include sufficient notice on the Products' labels to alert California consumers that the Products are artificially flavored.

62.    Defendant failed to do so.

63.    Accordingly, the Products were misbranded and illegal to distribute or sell in California. Cal. Health & Saf. Code §110740; §110760; §110765.

64.    Because the Products violated California law, they were misbranded when offered for sale.

65.    Plaintiffs lost money as a result of Defendant's conduct because they purchased Products that contained undisclosed artificial flavors and were illegal to sell.

66.    John Compton, the CEO of a competing beverage manufacturer, announced to investors that, "We have talked extensively to consumers . . . and they come back and tell us the number one motivation for purchase is products that claim to be all natural."

67.    Defendant's labeling and advertising reflects consumers' preferences -- not by making the Product solely with natural ingredients, but instead by concealing the fact that the Products are artificially flavored.

**Defendant's Competitors Label Their Products Lawfully.**

68.    Defendant not only deceives consumers but also gains an unfair commercial advantage in the marketplace by marketing and distributing misbranded Products.

69.    Manufacturers and distributor of competing beverage products label their

---

[4] "Consumers Want Healthy Foods--And Will Pay More For Them"; Forbes Magazine, February 15, 2015. https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; visited April 7, 2017.

CLASS ACTION COMPLAINT

products lawfully.

70.    Meadow Gold, Value Time, and Tang, for example, accurately label their artificially flavored fruit juice beverages as "Artificially Flavored."

71.    Other competing major manufacturers, offering products whose labels suggest just as Defendant's do that their products are naturally flavored, truly are flavored only with natural ingredients.

72.    Defendant, however, conceals the use of artificial flavoring, deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace, hurting their competitors as well as consumers.

73.    Defendant's conduct injures competing manufacturers and distributors that do not engage in the same illegal behavior. These manufacturers and distributors compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars.

74.    Defendant's competitors do so lawfully. Defendant does not.

**Plaintiffs' Purchases of the Product**

75.    Plaintiff Gross purchased one or more of the Products in California during the Class Period defined herein.

76.    Plaintiff Levin purchased one or more of the Products in California during the Class Period as defined herein.

77.    Plaintiff Gross purchased the Products in 2018 and 2019, most recently in August 2019 at the Costco store at Gateway Center Drive in San Diego, California.

78.    Plaintiff Levin purchased the Products multiple times since 2014, including, but not limited to, from a Gelson's Market store located at 2627 Lincoln Boulevard, Santa Monica, CA 90405 and a 99 Cents Only store located at 201 Lincoln Boulevard, Venice, California 90291

79.    The Products were purchased at the marked retail prices, recently $0.79 per 11.5 ounce single-serving can, or from time to time at higher or lower promotional prices.

80.     Plaintiff Levin first discovered Defendant's unlawful acts described herein in September of 2018, when she learned the Product's characterizing flavors were deceptively created or reinforced using artificial flavoring.

81.     Plaintiff Gross first discovered Defendant's unlawful acts described herein in March of 2020, when he learned the Product's characterizing flavors were deceptively created or reinforced using artificial flavoring.

82.     Plaintiffs were deceived by and relied upon the Product's deceptive labeling, and specifically the omission of the legally required notice that it contained artificial flavorings. Plaintiffs purchased the Product believing it was naturally flavored, based on the Product's deceptive labeling and failure to disclose that it was artificially flavored.

83.     Plaintiffs, as reasonable consumers, are not required to subject consumer food products to laboratory analysis, to scrutinize the back of the label to discover that the product's front label is false and misleading, or to search the label for information that federal regulations require be displayed prominently on the front – and, in fact, under state law are entitled to rely on statements that Defendant places on or omits from the Product's labeling.  Defendant, but not Plaintiffs, knew or should have known that this labeling was in violation of federal regulations and state law.

84.     Because Plaintiffs reasonably assumed the Products to be free of artificial flavoring, based on the Product labels, when they were not, they did not receive the benefit of their purchases. Instead of receiving the benefit of products free of artificial flavoring, they  received a Product that was unlawfully labeled so as to deceive the consumer into believing that it is exclusively naturally flavored and contains no artificial flavoring, in violation of federal and state labeling regulations.

85.     Plaintiffs would not have purchased the Products absent Defendant's misrepresentations and omissions. Had Defendant not violated California law, Plaintiffs would not have been injured.

86.    The Products were worth less than what Plaintiffs paid for them and class members would not have paid as much as they have for the Products absent Defendant's false and misleading statements and omissions.

87.    Plaintiffs lost money as a result of Defendant's unlawful behavior. Plaintiffs altered their position to their detriment and suffered loss in an amount equal to the amount they paid for the Product.

88.    Plaintiffs intend to, seek to, and will purchase the Products again when they can do so with the assurance that Product labels, which indicate that the Products are naturally flavored, are lawful and consistent with the Products' ingredients.

## V.    DELAYED DISCOVERY

89.    Plaintiffs did not discover that the labeling of the Products was false and misleading until 2018 and 2020, respectively, when they learned the Products contained undisclosed artificial flavoring.

90.    Plaintiffs and the Class members are reasonably diligent consumers who exercised reasonable diligence in their purchase and consumption of the Products. Nevertheless, they would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law. Furthermore, Defendant's labeling practices and non-disclosures—in particular, failing to identify the artificial flavor in the ingredient list, or to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Defendant put in the Products—impeded Plaintiffs' and Class members' abilities to discover the deceptive and unlawful labeling of the Products throughout the Class Period.

91.    Because Defendant actively concealed their illegal conduct, preventing Plaintiffs and the Class from discovering their violations of state law, Plaintiffs and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

# VI.    CLASS ACTION ALLEGATIONS

93.    Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class" and "sub-class") as a proposed class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), with a nationwide class and California sub-class.

94.    The Class is defined as follows:

> All U.S. citizens who purchased the Product in California on or after June 1, 2014, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

95.    The California sub-class is defined as follows:

> All California citizens who purchased the Product in California on or after June 1, 2014, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

96.    During the Class Period, the Products unlawfully contained the undisclosed artificial flavors d-malic acid or d-l malic acid and were otherwise improperly labeled as alleged herein. Defendant failed to label the Products as required by California law.

97.    The proposed Class and sub-class meet all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation.

98.    The proposed Class and sub-class satisfy numerosity. The Products are offered for sale at over two thousand supermarkets in California alone; the Class numbers at minimum in the hundreds of thousands. Individual joinder of the class members in this action is impractical. Addressing the class members' claims through this class action will benefit Class members, the parties, and the courts.

99.    The proposed Class and sub-class satisfy typicality. Plaintiffs' claims are typical of and are not antagonistic to the claims of other Class members. Plaintiffs and the class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result, purchasing products that were illegal to sell in California and the United States.

100.    The proposed Class and sub-class satisfy superiority. A class action is

12

superior to any other means for adjudication of the Class members' claims because each class member's claim is modest, based on the Product's retail purchase price which is generally under $5.00. It would be impractical for individual class members to bring individual lawsuits to vindicate their claims.

101.    Because Defendant's misrepresentations were made on the label of the Products themselves, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations. If this action is not brought as a class action, Defendant can continue to deceive consumers and violate California and other states' laws with impunity.

102.    The proposed Class representatives satisfy adequacy of representation. Each Plaintiffs is an adequate representative of the Class as each seeks relief for the Class, their interests do not conflict with the interests of the Class members, and each has no interest antagonistic to those of other class members. Plaintiffs have retained counsel who are competent in the prosecution of consumer fraud and class action litigation.

103.    There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

104.    Questions of law and fact common to Plaintiffs and the Class include:

    a.    Whether Defendant failed to disclose the presence of the artificial flavoring ingredient dl-malic acid in the Product;

    b.    Whether Defendant's label statement, "100% Natural" was a false or misleading statement of fact;

    c.    Whether Defendant's labeling omissions and representations constituted false advertising under California law;

    d.    Whether Defendant's conduct constituted a violation of California's Unfair Competition Law;

    e.    Whether Defendant's conduct constituted a violation of California's Consumer Legal Remedies Act;

CLASS ACTION COMPLAINT

f.    Whether Defendant's label statements were affirmative representations of the Product's composition and conveyed an express warranty;

g.    Whether Defendant's conduct constitutes a breach of implied warranties under California's Commercial Code;

h.    Whether Defendant's conduct violates U.S. Food and Drug Administration labeling regulations;

i.    Whether the statute of limitations should be tolled on behalf of the Class;

j.    Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

k.    Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

105.    Plaintiffs will fairly and adequately protect the interests of the Class, have no interests that are incompatible with the interests of the Class, and have retained counsel competent and experienced in class litigation.

106.    Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

107.    Class treatment is therefore appropriate. Plaintiffs will, if notice is required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice plan.

## VII.    CAUSES OF ACTION

### First Cause of Action: Violation of the CLRA

108.    Plaintiffs realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

109.    The California Consumers Legal Remedies Act, Cal. Civ. Code §1750 et seq. prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial

14

practices in connection with the sale of any goods or services to consumers.

110. Plaintiffs and the Class are "consumers" as defined by Cal. Civ. Code §1761(d). The Products are a "good" as defined by Cal. Civ. Code §1761.

111. Defendant's failure to label the Products in accord with federal and state labeling regulations, omitting the required information that the Products contain artificial flavoring, was an unfair, deceptive, unlawful and unconscionable commercial practice.

112. Defendant's conduct violates the Consumer Legal Remedies Act.

113. As a result of Defendant's violations, Plaintiffs and the Class suffered ascertainable losses in the form of the purchase price they paid for the unlawfully labeled and marketed products, which they would not have paid had the Product been labeled correctly, and in the form of the reduced value of the Product in relation to the Product as advertised.

114. Pursuant to §1782 of the CLRA, Plaintiffs will notify Defendant in writing of the particular violations of §1770 of the CLRA and demand that Defendant rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations, and giving notice to all affected customers of their intent to do so. Plaintiffs will send this notice by certified mail, return receipt requested, to Defendant's principal places of business, and if Defendant do not comply within 30 days, Plaintiffs will amend this complaint accordingly. Until such time, this Complaint seeks only injunctive relief andn not damages under §§1770 and 1782.

### Second Cause of Action: Violation of the UCL, Unlawful Prong

115. Plaintiffs reallege and incorporate by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

116. Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

117. The UCL borrows violations of other laws and statutes and considers those

1   violations also to constitute violations of California law.

2   118.   Defendant's practices as described herein were at all times during the Class

3   Period and continue to be unlawful under, *inter alia*, FDA regulations and California's

4   Sherman Law.

5   119.   Among other violations, Defendant's conduct in unlawfully distributing the

6   Products in commerce in California violated U.S. FDA packaging and labeling

7   regulations.

8   120.   Defendant distributes misbranded products in interstate commerce in

9   violation of federal law. 21 U.S.C. § 331.

10   121.   The Products' labels fail to disclose that they contain synthetic artificial

11   flavoring in violation of 21 CFR 101.22 and California's Sherman Law and are therefore

12   misbranded.

13   122.   The Products contain dl-malic acid.

14   123.   The dl-malic acid is a flavoring material that creates, simulates, and

15   reinforces the Products' characterizing fruit flavors.

16   124.   The dl-malic acid in the Products is not derived from any natural material as

17   defined in 21 CFR 101.22 and is therefore by law an artificial flavor.

18   125.   Defendant fails to inform consumers of the presence of the artificial flavor in

19   the Products, on either the front or back-label as required by law, and distributes the

20   Products in interstate commerce and in California.

21   126.   Defendant's practices are therefore unlawful as defined in Section 17200 of

22   the California Civil Code.

23   **Third Cause of Action: Violation of the UCL, Unfair Prong**

24   127.   Plaintiffs reallege and incorporate by reference each and every allegation

25   contained elsewhere in this Complaint as if fully set forth herein.

26   128.   Section 17200 of the California Business & Professions Code ("Unfair

27   Competition Law" or "UCL") prohibits any "unfair . . .business act or practice."

28   Defendant's practices violate the Unfair Competition Law "unfair" prong as well.

129.  The Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

130.  While Defendant's decision to distribute the misbranded Products in violation of federal and state law may have some utility to Defendant in that it allows Defendant to sell the Product to consumers who otherwise would not purchase an artificially-flavored food product at the retail price or at all if it were labeled correctly, and to realize higher profit margins than if the Product was formulated or labeled lawfully, this utility is small and far outweighed by the gravity of the harm Defendant inflicts upon California consumers.

131.  Defendant's conduct also injures competing food product manufacturers, distributors, and sellers that do not engage in the same unlawful, unfair, and unethical behavior.

132.  Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

133.  Plaintiffs' and all class members' purchases of the Product all took place in California.

134.  Defendant labeled the Product in violation of federal regulations and California law requiring truth in labeling.

135.  Defendant consciously failed to disclose material facts to Plaintiffs and the Class in Defendant's advertising and marketing of the Product.

136.  Defendant's conduct is unconscionable because, among other reasons, it violates 21 C.F.R. 101.22(c), which requires all foods containing artificial flavoring to include:

A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be

17

1    necessary to render such a statement likely to be read by the ordinary person
2    under customary conditions of purchase and use of such food.

3    137.    Defendant's conduct is "unconscionable" because it violates, inter alia, 21
4    C.F.R. 101.22(c), which requires all food products distributed in commerce in the U.S. for
5    which artificial flavoring provides a characterizing flavor to disclose this fact prominently
6    on the product's front label.

7    138.    Defendant intended that Plaintiffs and the Class rely on Defendant's acts of
8    omissions so that Plaintiffs and the other Class members would purchase the Product.

9    139.    Had Defendant disclosed all material information regarding the Product in its
10    advertising and marketing, Plaintiffs and the Class would not have purchased the Product
11    or would have paid less for the Product.

12    140.    Plaintiffs suffered injury in fact and lost money or property as a result of
13    Defendant's deceptive advertising: they were denied the benefit of the bargain when they
14    decided to purchase the Product based on Defendant's violation of the applicable laws and
15    regulations, or to purchase the Product in favor of competitors' products, which are less
16    expensive, contain no artificial flavoring, or are lawfully labeled.

17    141.    Plaintiffs suffered an ascertainable loss of money. The acts, omissions and
18    practices of Defendant detailed herein proximately caused Plaintiffs and other members
19    of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to
20    purchase the Product they otherwise would not have, and they are entitled to recover such
21    damages, together with appropriate penalties, including restitution, damages, attorneys'
22    fees and costs of suit.

23    142.    Section 17200 also prohibits any "unfair, deceptive, untrue or misleading
24    advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive,
25    untrue and misleading advertising in violation of California Business & Professions Code
26    §17200.

27    143.    Pursuant to California Business & Professions Code §17203, Plaintiffs seek
28    an order requiring Defendant to immediately cease such acts of unlawful, unfair and

18

1  fraudulent business practices and requiring Defendant to return the full amount of money

2  improperly collected to all those who purchased the Product.

3  **Fourth Cause of Action: Violation of False Advertising Law**

4  144.  Plaintiffs reallege and incorporate by reference each and every allegation

5  contained elsewhere in this Complaint as if fully set forth herein.

6  145.  Defendant made and distributed, in California and in interstate commerce, a

7  Product that unlawfully fails to disclose artificial flavoring on its packaging as required

8  by federal food labeling regulations.

9  146.  The Product's labeling and advertising in California falsely describe it as if

10  it were naturally-flavored.

11  147.  Some versions of the Products further advertise that the Product is "100%

12  Natural."

13  148.  Under California's False Advertising Law, Business and Professions Code

14  §17500 *et seq*,

15  "It is unlawful for any person, firm, corporation or association, or any employee

16  thereof with intent directly or indirectly to dispose of real or personal property . . .

17  to make or disseminate or cause to be made or disseminated before the public in

18  this state, or to make or disseminate or cause to be made or disseminated from this

19  state before the public in any state, in any newspaper or other publication, or any

20  advertising device . . .  any statement, concerning that real or personal property . . .

21  which is untrue or misleading, and which is known, or which by the exercise of

22  reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof.

23  Code §1.7500

24  149.  The labeling and advertising statements on Products that Defendant

25  distributed, communicating to consumers that the Product was "100% Natural," was solely

26  flavored with the natural fruit juices identified on the front labels, and concealing the fact

27  that the Products contained a synthetic artificial flavor, were untrue and misleading, and

28  Defendant at a minimum by the exercise of reasonable care should have known that

19

labeling was false or misleading.

150.   Defendant profited from and participated in the false advertising displayed on the Product labels.

151.   Defendant's conduct violated California's False Advertising Law.

**Fifth Cause of Action: Breach of Express Warranty**

152.   Plaintiffs reallege and incorporate by reference the allegations found elsewhere in the Complaint as if set forth in full herein.

153.   Some versions of the Product labels warrant that the Products are "100% Natural."

154.   The Products' front labels also misleadingly warrant by operation of law that the Products are flavored only with the listed fruits.

155.   These promises became part of the basis of the bargain between the parties and thus constituted an express warranty, which Defendant breached as the Products are artificially flavored.

156.   Defendant sold the goods to Plaintiffs and other consumers who bought the goods from Defendants.

157.   As a result, Plaintiffs and other consumers did not receive goods as warranted by Defendants.

158.   Within a reasonable amount of time after Plaintiffs discovered that the Product contained synthetic flavoring ingredients, Plaintiffs notified the Defendant of such breach.

159.   As a proximate result of this breach of warranty by Defendants, Plaintiffs and other consumers have been damaged in an amount to be determined at trial.

**Sixth Cause of Action:  Breach of Implied Warranty**

160.   Plaintiffs reallege and incorporate all of the allegations elsewhere in the Complaint as if set forth in full herein.

161.   Defendant's label representations also created implied warranties that the product was suitable for a particular purpose, specifically as a naturally-flavored food product. Defendant breached this warranty as well.

162.   The Product's front label misleadingly implies that it is flavored solely with the natural ingredients comprising the characterizing flavors.

163.   As alleged in detail above, at the time of purchase Defendant had reason to know that Plaintiffs as well as all members of the Class, intended to use the Product as a naturally-flavored food product.

164.   This became part of the basis of the bargain between the parties.

165.   Based on that implied warranty, Defendant sold the goods to Plaintiffs and other Class members who bought the goods from Defendants.

166.   At the time of purchase, Defendant knew or had reason to know that Plaintiffs and the Class members were relying on Defendant's skill and judgment to select or furnish a product that was suitable for this particular purpose, and Plaintiffs justifiably relied on Defendant's skill and judgment.

167.   The Product was not suitable for this purpose.

168.   Plaintiffs purchased the Product believing it had the qualities Plaintiffs sought, based on the deceptive advertising and labeling, but the Product was actually unsatisfactory to Plaintiffs for the reasons described herein.

169.   In addition, the Product was not merchantable in California, as it was not of the same quality as other products in the category generally acceptable in the trade.

170.   The Product would not pass without objection in the trade when packaged with its existing label, because the Product was misbranded and illegal to sell in California. Cal. Comm. Code 2314(2)(a).

171.   The Product also was not acceptable commercially and breached its implied warranty because it was not adequately packaged and labeled as required. Cal. Comm. Code 2314(2)(e).

CLASS ACTION COMPLAINT

172.    The Product also was not acceptable commercially and breached its implied warranty because it did not conform to the promises or affirmations of fact made on the container or label, Cal. Comm. Code 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

173.    By offering the Products for sale and distributing the Products in California, Defendant also warranted that the Products were not misbranded and were legal to purchase in California. Because the Products were misbranded in several regards and was therefore illegal to sell or offer for sale in California, Defendant breached this warranty as well.

174.    As a result of this breach, Plaintiffs and other California consumers did not receive goods as impliedly warranted by Defendants.

175.    Within a reasonable amount of time after the Plaintiffs discovered that the Products contained synthetic ingredients, Plaintiffs notified the Defendant of such breach

176.    As a proximate result of this breach of warranty, Plaintiffs and other California consumers have been damaged in an amount to be determined at trial.

177.    As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant were unjustly enriched.

## **Seventh Cause of Action:  Negligent Misrepresentation**

178.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

179.    The label representations on Products that Defendant distributed negligently misrepresented the Products as if they were exclusively naturally flavored.

180.    Defendant was negligent in distributing Products labeled as if they were exclusively naturally-flavored and in failing to identify the Products as artificially flavored.

181.    Defendant represented the Products to Plaintiffs and the Class as solely naturally flavored as if this were true.

182.   Defendant's representations were not true.

183.   The Products are not exclusively naturally flavored but are instead artificially flavored as described herein.

184.   Defendant had no reasonable basis for believing that the Products were naturally flavored at the time or any time relevant to this action.

185.   Defendant intended for Plaintiffs and the Class to rely on this representation.

186.   Plaintiffs and the Class reasonably relied on this representation.

187.   Plaintiffs and the Class were harmed thereby as alleged herein.

188.   Plaintiffs and the Class's reliance was a substantial factor in that harm.

189.   As a result, Plaintiffs and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

A.   An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiffs and their undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

B.   An order declaring that the conduct complained of herein violates the CLRA;

C.   An order declaring that the conduct complained of herein violates the UCL;

D.   An order declaring that the conduct complained of herein violates the FAL;

E.   An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

F.   An order requiring Defendant to disgorge any benefits received from Plaintiffs and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Product;

G.   An order requiring Defendant to pay restitution and damages to Plaintiffs and Class members so that they may be restored any money which was acquired

23

1    by means of any unfair, deceptive, unconscionable or negligent acts;

2    H.    An award of punitive damages in an amount to be proven at trial;

3    I.    An order enjoining Defendant's deceptive and unfair practices;

4    J.    An order requiring Defendant to conduct corrective advertising;

5    K.    An award of pre-judgment and post-judgment interest;

6    L.    An award of attorney fees and costs; and

7    M.    Such other and further relief as this Court may deem just, equitable, or proper.

## IX.    JURY DEMAND

Plaintiffs demand a trial by jury on all claims for damages. Plaintiffs do not seek a jury trial for claims sounding in equity.

DATED: May 13, 2020                    Respectfully Submitted,

/s/ Ronald A. Marron

**LAW OFFICES OF**
**RONALD A. MARRON**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone:  (619) 696-9006
Facsimile:   (619) 564-6665

**THE ELLIOT LAW FIRM**
DAVID ELLIOT (270381)
8033 Linda Vista Road, Ste. 200
San Diego, CA 92111
Telephone:  (619) 468-4865
***Counsel for Plaintiffs and the***
***Proposed Class***

CLASS ACTION COMPLAINT