UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN GROSS, DEBORAH LEVIN, SHELBY COOPER and EDWARD BUCHANNAN, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>VILORE FOODS COMPANY, INC., et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.:  20cv0894 DMS (JLB)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT VILORE FOODS COMPANY, INC.'S MOTION TO DISMISS AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT ARIZONA CANNING COMPANY, LLC'S MOTION TO DISMISS** |

This case returns to the Court on the motions to dismiss filed by Defendant Vilore Foods Company, Inc. ("Vilore") and Arizona Canning Company, LLC ("ACC"). Plaintiffs filed oppositions to each motion, and each Defendant filed a reply brief. For the reasons set out below, the Court grants in part and denies in part Vilore's motion and grants in part and denies in part ACC's motion.

**I.**

**BACKGROUND**

On May 13, 2020, Plaintiffs Warren Gross and Deborah Levin filed a Class Action Complaint against Vilore alleging claims under California's Consumers Legal Remedies

1

Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"), as well as claims for breach of express warranty, breach of implied warranty and negligent misrepresentation. In their Complaint, Plaintiffs alleged they purchased certain "juices and juice-based beverage products, including juice-based products labeled 'Guava Nectar', 'Apricot Nectar', and 'Peach Nectar' (the 'Products')[,]" (Compl. ¶8), which Vilore had distributed. (*Id.* ¶13.)

After a status conference between counsel and the Court, Plaintiffs filed a First Amended Complaint ("FAC") adding two new Plaintiffs, Shelby Cooper and Edward Buchannan, and ACC as a Defendant. Like Vilore, ACC was alleged to have distributed the Products. (FAC ¶14.) In the FAC, Plaintiffs sought to represent a nationwide class of consumers and a California subclass of consumers who purchased the Products on or after July 1, 2014. (*Id.* ¶¶94-95.) Plaintiffs alleged the Product labels, which include the names, "Mango," "Apricot," and "Peach," along with "pictorial representations of various fruits" mislead consumers by suggesting "that the Products consist exclusively of and are flavored only with natural juices." (*Id.* ¶35.) Indeed, Plaintiffs alleged that some of the labels included the phrase "100% Natural." (*Id.* ¶¶33 n.2, 36.) Plaintiffs alleged these labels were misleading and deceptive as the Products contain artificial flavoring, specifically, dl-malic acid. (*Id.* ¶¶37-42.) Finally, Plaintiffs alleged Vilore acted fraudulently by failing to provide an "artificially flavored" disclosure on the front-label as required by federal and state law. (Opp'n at 5 (citing FAC ¶¶ 47-51)).

In response to the FAC, Vilore filed a motion to dismiss, which the Court granted in part and denied in part. Specifically, the Court granted the motion to dismiss Plaintiffs' claims under the UCL and the CLRA and their claim for negligent misrepresentation for failure to comply with Rule 9(b), granted the motion to dismiss Plaintiffs' claims to the extent they relied on Defendants' failure to identify the specific form of malic acid used in the Products, and granted the motion to dismiss Plaintiffs' negligent misrepresentation claims based on purchases pre-dating May 13, 2018, CLRA and FAL claims based on

purchases pre-dating May 13, 2017, and breach of warranty and UCL claims based on purchases pre-dating May 13, 2016. The remainder of the motion was denied.

In accordance with the Court's Order, Plaintiffs filed a Second Amended Complaint ("SAC"). In response, Defendants filed the present motions.

## II.

## DISCUSSION

Each Defendant raises a number of arguments in support of its motion to dismiss. The Court addresses these arguments below.

### A. Legal Standard

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established a more stringent standard of review for 12(b)(6) motions. To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

### B. Federal Rules of Civil Procedure 8 and 9

In the Order on Vilore's first motion to dismiss, the Court found Plaintiffs had failed to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) with respect to their claims under the CLRA, the UCL, and their claim for negligent misrepresentation.

ACC raises a similar argument in its motion.  Specifically, it argues Plaintiffs have (1) failed to identify the Products at issue with the requisite specificity, (2) failed to specify which Defendants are alleged to have committed what conduct, and (3) failed to identify which Plaintiffs purchased which Products, and where are when those purchases were made.  Plaintiffs assert their allegations satisfy the requisite pleading standards.

On the issue of the Products, the Court agrees with Plaintiffs that they have sufficiently alleged which Products are at issue.  In Paragraph 8 of the SAC, Plaintiffs allege "Defendants, during the proposed Class Period, distributed, advertised, marketed, and sold a variety of Kern's juices and juice-based beverage products, including juice-based beverage products labeled 'Guava Nectar', 'Apricot Nectar', 'Mango Nectar,' and 'Peach Nectar' (the 'Products')."  (SAC ¶8.)  ACC argues, based on the word "including", that it is unclear from this allegation whether the four listed Products are the only ones at issue or if there are others.  But in their opposition to ACC's motion, Plaintiffs clarify that the only Products at issue are the four Products listed.  With this clarification, the Court finds Plaintiffs' allegations about the Products at issue satisfy the requisite pleading standards.

Next, ACC argues Plaintiffs have failed to identify what specific conduct gives rise to the claims against each Defendant.  Plaintiffs dispute this argument, and assert their allegations are sufficient.  Here, again, the Court agrees with Plaintiffs.  In Paragraphs 13 and 14 of the SAC, Plaintiffs allege Vilore has been the U.S. Distributor of the Products since 2018, (*id.* ¶13), and ACC was the U.S. Distributor from May 13, 2016 (the beginning of the earliest Class Period), through December 31, 2017.  (*Id.* ¶14.)  Plaintiffs also identify an exemplar of the Products at issue in Paragraph 33 of the SAC, and explain why those exemplars are false and misleading.  (*See id.* ¶¶17, 36) (stating pictures of fresh fruit combined with names of fresh fruit represented that Products were "flavored only with natural ingredients when the Products in fact contain an undisclosed artificial flavor").  Plaintiffs go on to identify another set of exemplars that they allege were distributed by ACC only, (*id.* ¶37), and explain that those exemplars were false and misleading for the

reasons set out above and because they stated "100% Natural" on the front of the Products. (*Id.* ¶¶37-41.) Contrary to the allegations in the FAC, these allegations satisfy the "who, what, when, where and how" of Rule 9(b), and necessarily, the notice requirements of Rule 8. Accordingly, ACC's request to dismiss Plaintiffs' claims based on these Rules is denied.

**C.     Constitutional Standing**

ACC also argues Plaintiffs failed to plead with specificity what Products they purchased and when those purchases were made, therefore they lack constitutional standing. Although ACC fails to fully explain this argument, ACC appears to be arguing that Plaintiffs have failed to plead Defendants caused their injuries because it is unclear whether Plaintiffs purchased Products that were distributed by Vilore, ACC, or both. Plaintiffs respond that they have identified the Products they purchased and when those purchases were made, which is sufficient to satisfy the standing requirements.

Plaintiffs' allegations about their individual purchases are as follows:

(1) Plaintiff Gross purchased the Products in 2018 and 2019, (*id.* ¶92);

(2) Plaintiff Levin purchased the Products "multiple times" between 2014 and 2018, (*id.* ¶¶93-94);

(3) Plaintiff Cooper purchased the Products "multiple times" between 2012 and 2020, (*id.* ¶96); and

(4) Plaintiff Buchannan purchased the Products "multiple times" between 1999 and 2020. (*Id.* ¶98.)

Contrary to ACC's argument, these allegations are sufficient to satisfy the causation element of standing for Plaintiffs' claims against both Defendants because the purchases were made over the course of both Defendants' distribution of the Products.

ACC takes particular aim at the allegations surrounding Plaintiff Gross because his purchases were made after ACC stopped distributing the Products. However, Plaintiffs allege that although ACC ceased being the distributor on December 31, 2017, it may still be held liable because "Products identifying ACC as the distributor and therefore the liable party likely continued to be sold in the U.S. during at least a substantial part of 2018." (*Id.*

¶14 n.1.) ACC asserts this allegation is nothing more than an "implausible, speculative, and fact-devoid hypothesis[,]" (Reply at 4), but on this motion, the Court must construe Plaintiffs' factual allegations as true, and as so construed, it is plausible that ACC caused injury to Plaintiff Gross. Therefore, ACC's challenge to his standing is rejected.[1]

### D.     CLRA, UCL and FAL Claims

Having resolved the threshold issues, the Court now turns to Defendants' arguments on the individual claims. On the CLRA, UCL, and FAL claims, Vilore raises two arguments. First, it argues the claims are implausible because no reasonable consumer is likely to be deceived by the Product labels. Second, Vilore asserts Plaintiffs lack statutory standing to pursue these claims. ACC also raises arguments as to these claims, but its arguments are directed at the claims individually rather than as a whole. Specifically, ACC argues Plaintiffs' CLRA claim should be dismissed because Plaintiffs have failed to comply with the procedural requirements for such a claim, and because the labels do not include any affirmative misrepresentations. On the "unlawful" UCL claim, ACC argues Plaintiffs have failed to allege a violation of any law, therefore that claim should be dismissed. On the "unfair" UCL claim, ACC asserts it should be dismissed because Plaintiffs have failed to allege sufficient facts to support any "unfair" conduct. And on the FAL claim, ACC argues it should be dismissed because Plaintiffs have not alleged any untrue or misleading advertising or reliance thereon.

Plaintiffs' response to Vilore's first argument is that the Court should not consider it because it is inappropriate for resolution on the present motion. There is no hard-and-fast rule against making a reasonable consumer determination on a motion to dismiss. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161-62 (9th Cir. 2012) (affirming

---

[1] ACC also raises what it describes as a standing argument directed to Plaintiff Levin. However, that argument is not one of standing. Rather, it sounds in judicial estoppel, and is based on evidence outside the SAC. Considering the latter point, the Court declines to resolve that argument in the context of the present motion.

dismissal of claims because advertising not likely to deceive reasonable consumer). However, the Ninth Circuit has cautioned that it will be a "rare situation" where granting a motion to dismiss on this ground is appropriate. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

This case does not present one of those rare situations. As in *Williams*, there are a number of features on the Product labels that "could likely deceive a reasonable consumer" into thinking the Products are naturally flavored. *Id.* As depicted below, the words "Peach Nectar" and "Guava Nectar" are featured prominently on the front labels of the respective Products above images of peaches and guavas:

 

(SAC ¶33.) There is also an image of a sticker that says "Made with Whole Fruit," an image of a hummingbird, and an image of a leaf being used as an apostrophe in the word "Kern's". Considering all of these words and images together, the Court cannot say no reasonable consumer is likely to be deceived into thinking the Products are naturally flavored. *See Allred v. Kellogg Co.*, No. 17-CV-1354-AJB-BLM, 2018 WL 1158885, at *3 (S.D. Cal. Feb. 23, 2018) (finding "reasonable consumer could construe the packaging

as depicting all natural ingredients and flavors" where images on front label "certainly give[ ] an impression of freshly baked chips where the salt flavoring comes from the sprinkled salt and the vinegar flavoring comes from the bottles.")[2]  This is especially so for Products that also include the phrase "100% Natural" on the front label, as depicted below:



(SAC ¶37.)  *See Rojas v. Gen. Mills, Inc.*, No. 12-CV-05099-WHO, 2014 WL 1248017, at *3 (N.D. Cal. Mar. 26, 2014) ("The front of the Nature Valley products' packaging prominently displays the term "100% Natural" that could lead a reasonable consumer to believe that the products contain only natural ingredients.")  Accordingly, this argument does not warrant dismissal of Plaintiffs' claims under the CLRA, UCL and FAL.

Vilore's next argument is that Plaintiffs have failed to sufficiently allege reliance, therefore they lack statutory standing under the CLRA, UCL and FAL.  Specifically, Vilore asserts Plaintiffs' allegations that they relied on the front label are insufficient in light of

---

[2] *Kellogg* also dispels the argument raised by both Defendants that no reasonable consumer is likely to believe the Products are naturally flavored because there is no affirmative representation to that effect anywhere on the Products it allegedly distributed.  In that case, the products did not represent that they were "all natural" or "100% Natural," but the court still found the products capable of deceiving a reasonable consumer.

the back label, which accurately lists all of the ingredients.[3]  The Ninth Circuit, however, rejected a similar argument in *Williams*.  There, the court "disagree[d] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."  *Williams*, 552 F.3d at 939.  The court stated that although the ingredient list certainly served some purpose,

> [w]e do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id.* at 939-40.  *See also Lam v. Gen. Mills, Inc.*, 859 F.Supp.2d 1097, 1104 (N.D. Cal. 2012) ("at the pleading stage, the Court cannot conclude that a reasonable consumer should be expected to look beyond "made with real fruit" in order to discover the truth in the small print."); *Tucker v. Post Consumer Brands, LLC*, No. 19-CV-03993-YGR, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020) (stating that if reasonable consumer is misled by front of packaging, they are "not expected to pick up the product and examine the fine print on the ingredient list.")  Accordingly, Vilore's reliance argument does not warrant dismissal of the CLRA, UCL and FAL claims.

Turning to ACC's arguments, the first is that the CLRA claim should be dismissed because Plaintiffs failed to comply with California Civil Code § 1780(d).  This statute provides:

---

[3] Vilore also suggests Plaintiffs' allegations regarding reliance are insufficient because they rely on Defendants' failure to disclose explicitly that the Products are artificially flavored. (Mem. of P. & A. in Supp. of Vilore's Mot. at 12.)  However, and as discussed above, Plaintiffs do not rely solely on the omission of an "artificially flavored" disclosure on the Products.  Plaintiffs also rely on the front labels, independent of any omission, to support not only the reliance element, but their claims, as a whole.

> In any action subject to this section, concurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action. If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice.

Cal. Civ. Code § 1780(d). The statute defines the "proper place for trial of the action" as "the county in which the person against whom it is brought resides, has his or her principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred." *Id.* Plaintiffs do not dispute that they failed to file this affidavit. Instead, they contend the affidavit requirement is a procedural rule, and thus it does not apply to federal court proceedings. In support of this argument, Plaintiffs cite *Evans v. Linden Research, Inc.*, 763 F.Supp.2d 735, 737 n.1 (E.D. Pa. 2011). However, the majority of California federal courts do not agree with *Evans*. *See McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *11 (N.D. Cal. Feb. 2, 2021) (finding plaintiff lacked standing to pursue CLRA claim because he failed to file affidavit under § 1780(d) and citing cases); *Ruszecki v. Nelson Bach USA Ltd.*, No. 12-CV-495-L(NLS), 2015 WL 13344859, at *5 (S.D. Cal. Jan. 12, 2015) (citing *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1055 (C.D. Cal. 2014)) (disagreeing with *Evans* and stating, "even in federal courts, plaintiffs must file an affidavit pursuant to section 1780(d) in order to assert a CLRA claim.") This Court is persuaded by the reasoning of the majority of California district courts, and adopts that same conclusion here. Because Plaintiffs failed to file the required affidavit, their CLRA claim must be dismissed.

Next, ACC argues Plaintiffs' "unlawful" claim under the UCL should be dismissed because Plaintiffs have failed to plead sufficient facts to support their claim that Defendants engaged in unlawful conduct. Plaintiffs identify the laws at issue here as "FDA regulations and California's Sherman Law." (SAC ¶139.) Specifically, Plaintiffs allege Defendants failed to disclose the Products "contain synthetic artificial flavoring in violation of 21 CFR § 101.22 and California's Sherman Law and are therefore misbranded." (*Id.* ¶141.)

Clearly, Defendants disagree with Plaintiffs' allegation that their Products are misbranded. However, Plaintiffs have alleged sufficient facts to support that allegation. Plaintiffs allege the Products contain malic acid, (*id.* ¶42), that the malic acid "is a synthetical chemical added to the Products to simulate and reinforce the Products' characterizing fruit flavors[,]" (*id.* ¶45), *i.e.*, it is an artificial flavoring, and that Defendants "failed to properly disclose this artificial flavor on the Products' 'principle display panel' or 'panels' of the label, violating federal, California, and other states' laws in multiple ways." (*Id.* ¶50.)[4] On this motion, the Court must assume these factual allegations are true, and as so construed, Plaintiffs have alleged a violation of at least, 21 C.F.R. § 101.22(i). Accordingly, ACC's request to dismiss this claim is denied.

The next claim is the "unfair" claim under the UCL. ACC argues Plaintiffs have failed to set forth facts to support a claim under either the "public policy" test for unfairness, or the "balancing test" for unfairness. Plaintiffs disagree.

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473, 49 Cal. Rptr. 3d 227, 240 (2006) (citations omitted). Here, as discussed above, Plaintiffs have set forth sufficient facts to support their claim that Defendants' conduct violates FDA regulations and the Sherman Act, and thereby violates

---

[4] Vilore asserts Plaintiffs' allegation that malic acid is used as an artificial flavor is not a factual allegation, but is a legal conclusion couched as a factual allegation. (Mem. of P. & A. in Supp. of Vilore's Mot. at 16.) The Court disagrees with that assessment. Vilore also disputes that the malic acid in the Products is used as an artificial flavor, insisting "the Products use malic acid as a pH control agent as permitted by the FDA." (*Id.* at 5.) This dispute, however, is not amenable to resolution on the present motion, *see Allred v. Frito-Lay N. Am.*, Inc., No. 17-CV-1345 JLS (BGS), 2018 WL 1185227, at *5 (S.D. Cal. Mar. 7, 2018) (stating "[w]hether malic acid falls into one of these categories is also a factual determination that would be inappropriately resolved on a motion to dismiss."), and it does not warrant dismissal of Plaintiffs' "unlawful" claim under the UCL.

public policy.  Plaintiffs have also set forth facts to support a claim under the "balancing test."  (*See*, *e.g.*, SAC ¶157) (setting out facts to support "unscrupulous conduct"); (*id.* ¶151) (setting out benefits to Defendants from alleged misbranding); (*id.* ¶¶161-62) (setting out harm and injury to consumers as a result of misbranding).  Accordingly, ACC's request to dismiss the "unfair" claim under the UCL is also denied.[5]

### E.     Breach of Express Warranty

Turning to Plaintiffs' breach of express warranty claim, Vilore argues that claim fails as a matter of law and thus should be dismissed.  Specifically, Vilore asserts "this claim fails because the front label contains no affirmative representation regarding the lack of artificial flavoring, and the backside label accurately discloses the ingredients included in the Products."  (Mem. of P. & A. in Supp. of Vilore's Mot. at 13.)  ACC adds that this claim should be dismissed because Plaintiffs failed to "allege any facts to support that they read and relied on the Products' labels in this regard."  (Mem. of P. & A. in Supp. of ACC's Mot. at 19.)  Plaintiffs maintain that their allegations are sufficient.

To the extent Vilore is asserting that this claim fails because Plaintiffs have failed to allege an affirmative representation, the Court declines to find that failure warrants dismissal of the express warranty claim.  Although Vilore cites cases supporting its position, *see*, *e.g.*, *Lam*, 859 F. Supp. 2d at 1106, other cases have allowed these kinds of claims to proceed.  *See Kellogg*, 2018 WL 1158885, at *5 (denying motion to dismiss express warranty claim in light of plaintiff's allegations that "the product's label contains the express warranty that the ingredient is natural, and Kellogg breached that warranty through its unlabeled use of artificial ingredients instead."); *Sims v. Campbell Soup Co.*,

---

[5] ACC also moves to dismiss Plaintiffs' FAL claim on the grounds Plaintiffs have failed to allege facts to support their allegation that the Products contain "any untrue or misleading advertising by ACC, nor reliance thereon."  (Mem. of P. & A. in Supp. of ACC's Mot. at 18.)  For the reasons set out above and below, the Court rejects these arguments as applied to the FAL claim.  Accordingly, Defendants' request to dismiss the FAL claim is denied.

No. EDCV18668PSGSPX, 2018 WL 7568640, at *9 (C.D. Cal. Sept. 24, 2018) (following *Kellogg* and noting that statement at issue "could still potentially be misleading depending on how it was interpreted by the reader[,]" and that resolving that issue on a motion to dismiss was not appropriate). Thus, this argument does not warrant dismissal of the express warranty claim.

ACC's argument that Plaintiffs failed to plead sufficient facts to support the reliance element of this claim also fails. Although Plaintiffs did not plead any facts about reliance under the heading of their express warranty claim, they did plead sufficient facts elsewhere in the SAC, (*see* SAC ¶ 104) ("Plaintiffs relied upon and were deceived by the Products' deceptive labeling, and specifically the omission of the legally required notice that it contained artificial flavorings. Plaintiffs purchased the Products believing they were naturally flavored, based on the Products' deceptive labeling and failure to disclose that they were artificially flavored."), and incorporated those allegations into their express warranty claim. (*Id.* ¶174.) Thus, this argument also does not warrant dismissal of Plaintiffs' express warranty claim.[6]

### F.     Breach of Implied Warranty

On the breach of implied warranty claim, Vilore raises the same arguments raised in response to Plaintiffs' other claims, which arguments the Court has addressed above. ACC raises one new argument on this claim, namely that it fails because Plaintiffs did not allege

---

[6] Defendants also suggests this claim (and others) should be dismissed because their Product labels are accurate. (Mem. of P. & A. in Supp. of Vilore's Mot. at 13.) This theme runs throughout Defendants' motions, but it ignores the relevant inquiry on a motion to dismiss, which is whether Plaintiffs have alleged sufficient facts and a cognizable legal theory in support of their claims. It also ignores that in ruling on a motion to dismiss, the Court is obligated to construe Plaintiffs' factual allegations as true. Clearly, Defendants dispute that their Product labels were false or misleading, but that is a question for another day. It does not provide a ground for dismissal of Plaintiffs' claims at this stage of the case.

they entered into any "contract for … sale" with ACC.[7]  Notably, ACC fails to cite any case law to support its apparent position that Plaintiffs' purchase of the Products would not constitute a "contract for sale."  There is case law suggesting, however, that these kinds of implied warranty claims "rise[ ] and fall[ ] with express warranty claims brought for the same product."  *Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052, 1096 (N.D. Cal. 2017).  There is also case law allowing implied warranty claims to proceed on facts similar to those alleged in this case.  *See Augustine v. Talking Rain Beverage Co., Inc.*, 386 F.Supp.3d 1317, 1332-33 (S.D. Cal. 2019) (denying motion to dismiss implied warranty claim based on allegation that "Products misrepresent that they are 'naturally flavored' sparkling water when the Products in fact contain the artificial flavor d-l malic acid, which is not disclosed.")  This Court takes the latter approach and declines to dismiss this claim at this stage.

**G.   Negligent Misrepresentation**

The final claim at issue is for negligent misrepresentation.  Vilore argues, as it did with other claims, that this claim must be dismissed because Plaintiffs have failed to allege an affirmative misrepresentation.  Plaintiffs do not address this legal argument, but instead assert that their allegations are sufficient.

Although this argument did not carry the day for the other claims, case law supports Vilore's legal position that an affirmative or "positive" assertion is required to state a claim for negligent misrepresentation.  *See Wilson v. Century 21 Great Western Realty*, 15 Cal. App. 4th 298, 306 (1993) (stating negligent misrepresentation claim requires "positive assertion," and that "'implied' assertion or representation is not enough."); *Brownfield v. Bayer Corp.*, No. 2:09-cv-00444-JAM-GGH, 2009 WL 1953035, at *6 (E.D. Cal. July 6, 2009) (citing *Wilson* and dismissing negligent misrepresentation claim); *McKinnis v.*

---

[7] California Commercial Code § 2314(1) states "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Cal. Comm. Code § 2314(1).

*General Mills, Inc.*, No. CV 07-2521 GAF (FMOx), 2007 WL 4762172, at *5 (C.D. Cal. Sept. 18, 2007) (same). Here, Plaintiffs have not identified a specific, affirmative, positive representation in support of their claim against Vilore. Rather, this claim, along with the others, is based on a combination of words and images on the Product labels, coupled with Defendants' alleged failure to disclose the addition of artificial flavoring. In the absence of any allegation of a "positive" assertion on the Vilore Products, the negligent misrepresentation claim against Vilore is dismissed.

As for ACC, it argues it cannot be held liable on this claim because it is based on purchases made on or after May 13, 2018, (SAC ¶207), and ACC stopped distributing Products on December 31, 2017. (*Id.* ¶14.) Plaintiffs respond that ACC may still be held liable because "Products identifying ACC as the distributor and therefore the liable party likely continued to be sold in the U.S. during at least a substantial part of 2018." (*Id.* ¶14 n.1.) Given that factual allegation, ACC is not entitled to dismissal at this stage based on any time bar.

ACC raises other arguments in support of dismissal of this claim, but those arguments also do not warrant dismissal. As explained above, Plaintiffs have satisfied Rule 9(b) with respect to the claims, and unlike with Vilore, Plaintiffs have alleged a "positive" assertion on Products distributed by ACC, namely, that the Products are "100% Natural." Accordingly, the motion to dismiss this claim as against ACC is denied.

### H.    Venue

The last argument on these motions is ACC's argument that the case should be dismissed for improper venue. Specifically, ACC argues it is not a resident of this District and a substantial part of the events giving rise to the claim did not occur in this District, therefore the case should be dismissed. ACC acknowledges, however, that Plaintiff Gross "purchased the Products multiple times during the proposed Class Period in San Diego County, California", (*id.* ¶29), and as explained above, some of the purchases may have been Products distributed by ACC. Accordingly, the Court denies ACC's request to dismiss the case based on improper venue.

# III.

# CONCLUSION AND ORDER

For the reasons discussed above, both Defendants' motions to dismiss are granted in part and denied in part. Specifically, the Court grants the motion to dismiss Plaintiffs' CLRA claim for failure to comply with California Civil Code § 1780(d), and grants the motion to dismiss Plaintiffs' negligent misrepresentation claim against Defendant Vilore. The motions to dismiss all other claims are denied, as is ACC's request to dismiss the claim for lack of improper venue. Because these bases for dismissal were not raised in Vilore's previous motion to dismiss, the Court grants Plaintiffs leave to file a Third Amended Complaint that cures the pleading deficiencies set out above. Plaintiffs are cautioned that if their Third Amended Complaint does not cure these deficiencies, their claims will be dismissed with prejudice and without leave to amend. Plaintiffs shall file their Third Amended Complaint on or before **April 23, 2021**. Because at least some claims will survive any future motion to dismiss, the Court refers the parties to the Magistrate Judge for an Early Neutral Evaluation conference, at which time all dates, including a trial date, shall be set.

**IT IS SO ORDERED**.

Dated:  April 15, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court