1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

WARREN GROSS, DEBORAH LEVIN, SHELBY COOPER, and EDWARD BUCHANNAN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

VILORE FOODS COMPANY, INC., and ARIZONA CANNING COMPANY, LLC,

Defendants.

Case No.:  20cv894-LL-JLB

**ORDER ON (1) PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL AND (2) DEFENDANT VILORE'S MOTION TO EXCLUDE EXPERT REPORTS**

**[ECF Nos. 75, 97, 106]**

20

        This matter comes before the Court on Plaintiffs' motion for class certification and

21
to appoint class counsel [Doc. No. 75], and Defendant Vilore Foods Company, Inc.'s[1]

22
motion to exclude the expert reports of Plaintiffs' experts Dr. Michael Belch and Charlene

23
Podlipna [Doc. No. 97].  The motions have been fully briefed and the Court deems them

24
25
26

[1] On April 1, 2022, Plaintiffs filed a Notice of Settlement with Defendant Vilore Foods Company, Inc.

27
only.  [Doc. No. 122.]  Plaintiffs indicate that upon finalization of the settlement, Plaintiffs will file a
notice of dismissal of their individual claims against Vilore with prejudice and dismissal of their class

28
action claims against Vilore without prejudice.  [*Id.*]  Accordingly, the Court **DENIES AS MOOT**
Vilore's pending motion to exclude Plaintiffs' experts.  [Doc. No. 97.]

suitable for determination on the papers submitted and without oral argument. *See* CivLR 7.1(d)(1). For the reasons set forth below, the motion for class certification is **DENIED** and the motion to exclude the expert reports of Dr. Belch and Ms. Podlipna is **DENIED AS MOOT**.

## I. BACKGROUND

This case arises from Defendants Vilore Foods Company, Inc. ("Vilore") and Arizona Canning Company, LLC's ("ACC") (collectively, "Defendants") purported violations of consumer protection laws through their distribution of various Kern's juice-based beverage products. [Doc. No. 75-1 at 10.] Plaintiffs Warren Gross and Deborah Levin filed a putative class action complaint against Vilore on May 13, 2020. [Doc. No. 1.] Following various dismissals and subsequent amendments to the complaint, Plaintiffs Gross, Levin, Cooper, and Buchanan (collectively, "Plaintiffs") filed the operative Third Amended Complaint ("TAC") against Vilore and ACC on April 23, 2021. [Doc. No. 49.] The following are allegations from the TAC.

Defendant ACC was the former designated U.S. distributor for Kern's juice-based beverage products labeled "Guava Nectar," "Apricot Nectar," "Mango Nectar," and "Peach Nectar" (collectively, the "Products") from May 13, 2016 (start of the proposed class period) until December 31, 2017. [*Id.* ¶ 26.] Defendant Vilore is the current designated U.S. distributor for the Products and has been since July 2018.[2] [*Id.* ¶ 23.] During the respective periods when each Defendant was the identified distributor, each Defendant "advertised, marketed, distributed, and sold the Products in California and throughout the United States." [*Id.* ¶ 27.] The Products[3] distributed by both Defendants contained an

---

[2] ACC contends that when it ceased being the Products' U.S. distributor, non-party Faribault Foods, Inc. began the U.S. distribution of the Products until approximately June 30, 2018. [Doc. No. 84 at 9.] On or about July 1, 2018, Vilore took over U.S. distribution of the Products. [*Id.*]

[3] ACC claims that the "Mango Nectar" product never contained dl-malic acid during the class period [Doc. No. 84 at 10], which Plaintiffs state was only disclosed to them after they filed their motion for class certification. [Doc. No. 95 at 4 n.3.] In their reply to ACC's opposition, Plaintiffs state that they do not object to removing "Mango Nectar" from the class definitions. [*Id.*]

artificial flavoring ingredient called "dl-malic acid," which was disclosed in the ingredients list on the rear-label of the Products. [*Id.* ¶¶ 42-43.] Some of the Products distributed by ACC on or around 2017 "during an interval of the proposed class period"[4] had the statement "100% Natural" printed on the front label. [*Id.* ¶ 37.] Some of the Products distributed by Vilore had the statement "Made with Whole Fruit" printed on the front label. [*Id.* ¶ 33.] Plaintiffs claim that Defendants failed to disclose the artificial flavoring ingredient on the front label and advertised the Products as if they were flavored only with natural ingredients, thereby violating various state and federal consumer protection laws. [*Id.* ¶ 50.] Plaintiffs also allege that they would not have purchased the Products, or would have paid less for them, if not for Defendants' alleged misrepresentations and omissions. [*Id.* ¶¶ 107-108.] However, Plaintiffs intend to and will purchase the Products again in the future if the Products' labels "are lawful and consistent with the Products' ingredients." [*Id.* ¶ 110.]

The TAC asserts six claims against both Defendants on behalf of the "California Class"[5]: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*; (2) violation of the "unlawful" prong of California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200 *et seq.*; (3) violation of the "unfair" prong of the UCL; (4) violation of California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500 *et seq.*; (5) breach of express warranties, California Commercial Code § 2313; and (6) breach of implied warranties, California Commercial Code § 2314.[6] [*Id.* ¶¶ 126-205.] Plaintiffs' seventh

---

[4] Plaintiffs admit that the "[p]roduct labels reportedly changed at times during the class period," but claim that "those changes are not material to the legal responsibilities described by the allegations herein." [Doc. No. 49 ¶ 37.]

[5] Plaintiffs' fifth and sixth claims for breach of express warranties and breach of implied warranties are asserted on behalf of the California Class and "all states with substantially similar laws." [Doc. No. 49 ¶¶ 174-205.]

[6] Plaintiffs' first and fourth claims are based on purchases made by California class members from May 13, 2017 to present. Plaintiffs' second, third, fifth, and sixth claims are based on purchases made by California class members from May 13, 2016 to present. [Doc. No. 49 ¶¶ 126-205.]

claim is brought against only ACC on behalf of the "Nationwide Class" and the "California Class," alleging negligent misrepresentation under California Civil Code §§ 1709-1710 "and the common law of all states."[7]   [*Id.* ¶¶ 206-220.]   Plaintiffs seek restitution, disgorgement of any unjust enrichment, an injunction on Defendants' "deceptive and unfair practices," and an "order requiring Defendants to conduct corrective advertising," among other remedies.  [*Id.* at 31-32.]

Plaintiffs now move to certify two classes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3):

(1) A Nationwide Class consisting of all persons who purchased one or more of the following products in the United States anytime between May 13, 2016 and July 22, 2019 for personal and household use and not for resale: Kern's Guava Nectar, Kern's Apricot Nectar, Kern's Mango Nectar, Kern's Peach Nectar.

(2) A California Subclass consisting of all persons who purchased one or more of the following products in California anytime between May 13, 2016 and July 22, 2019 for personal and household use and not for resale: Kern's Guava Nectar, Kern's Apricot Nectar, Kern's Mango Nectar, Kern's Peach Nectar.

Excluded from the Class and Subclass are Defendants and Defendants' officers, directors, employees, agents, and affiliates, and the Court and its staff.  [Doc. No. 75 at 2.]

## II.   MOTION FOR CLASS CERTIFICATION

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted).  When considering class certification, the Court must engage in "a rigorous analysis" to ensure that "the prerequisites of Rule 23(a) have been satisfied."  *Id.* at 350-51 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  This analysis requires that the Court "judg[e] the persuasiveness of the evidence

---

[7] Plaintiffs' seventh claim is based on purchases made by class members from May 13, 2018 to present. [Doc. No. 49 ¶ 207.]

presented" for and against certification, and "resolve any factual disputes necessary to determine whether" the Rule 23(a) requirements have been met. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982-83 (9th Cir. 2011).

"[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class." *Id.* at 981. Thus, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Id.* (emphasis in original). At the same time, courts "consider merits questions at the class certification stage *only* to the extent they are relevant to whether Rule 23 requirements have been met." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (emphasis added). "While some evaluation of the merits frequently cannot be helped in evaluating commonality, that likelihood of overlap with the merits is no license to engage in free-ranging merits inquiries at the certification stage." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (internal quotation marks and citation omitted). "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not turn class certification into a mini-trial on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015).

"Parties seeking class certification must satisfy each of the four requirements of [Federal Rule of Civil Procedure] 23(a) . . . and at least one of the requirements of Rule 23(b)." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017). "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (internal quotation marks, brackets, and ellipses omitted).

Plaintiffs contend that in addition to satisfying Rule 23(a)'s requirements, class certification is warranted under Rule 23(b)(2) and Rule 23(b)(3). Certification under Rule 23(b)(2) is appropriate only when "the party opposing the class has acted or refused to act

on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Certification under Rule 23(b)(3) is appropriate only if "common questions of law or fact found under Rule 23(a)(2) 'predominate over any questions affecting only individual members, and . . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Torres*, 835 F.3d at 1132 (citing FED. R. CIV. P. 23(b)(3)).

Plaintiffs move for certification of a proposed Nationwide Class (based on their claims for breach of express and implied warranties and negligent misrepresentation) and a California Subclass (based on all claims) under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). [Doc. No. 75-1 at 11.]

### A.     Rule 23(a) Requirements

#### 1.     Numerosity

The "numerosity" requirement is satisfied if the "class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  Although numerosity is not tied to any fixed numerical threshold – it "requires examination of the specific facts of each case and imposes no absolute limitations" – courts generally find numerosity is met where a proposed class includes at least 40 members. *See Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17cv2335-GPC(MDD), 2018 WL 6300479, at *3 (S.D. Cal. Nov. 29, 2018).

Plaintiffs cite to documents produced by Defendants in discovery showing that the "Products were purchased hundreds of thousands of times in California and the United States during the Class period" to establish that the proposed classes are sufficiently numerous under Rule 23(a)(1). [Doc. No. 75-1 at 15.]  ACC disputes numerosity, arguing that the documents Plaintiffs rely on show wholesales to stores rather than retail sales to individual consumers, do not account for any Products that were distributed but not sold to consumers, and do not establish the location of any consumer purchases or what label was on the Products purchased. [Doc. No. 84 at 18.]  Nevertheless, if Defendants distributed

hundreds of thousands of wholesale Products in California and the United States during the class period, the Court may reasonably infer that over 40 individual consumers purchased at least one of the Products both in California and in the entire United States during the class period. *See Hilsley*, 2018 WL 6300479, at *3 ("A court may reasonably infer based on the facts of each particular case to determine if numerosity is satisfied."); *see also McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2020 WL 1157191, at *3 (S.D. Cal. Mar. 9, 2020) (finding numerosity met where "many Products have been sold" and given "the large number of potential class members"). Accordingly, the Court concludes that numerosity has been satisfied.

### 2. Commonality

To satisfy the commonality requirement, a plaintiff must establish that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," meaning that their claims "depend upon a common contention." *Dukes*, 564 U.S. at 349-50. "That common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Accordingly, "it is not just the common contention, but the answer to that contention, that is important . . . [what matters is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (internal quotation marks and citations omitted). Dissimilarities within the proposed class "have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (internal citations omitted).

In their motion for certification, Plaintiffs argue that commonality is met because all class members purchased Products containing dl-malic acid, where "those Product labels represented that the Products were flavored only with natural flavors" by: (1) characterizing them with fruit flavors (i.e. peach, guava, etc.); (2) including pictorial representations of fresh, ripe fruit; (3) claiming the Products were made with "whole fruit";

and (4) failing to disclose the presence of artificial flavoring. [Doc. No. 75-1 at 16.] Plaintiffs also note that some class members were "exposed to ACC's labeling statement that the Products were '100% Natural.'" [*Id.*] In their reply to ACC's opposition, Plaintiffs drop the allegation that the Products were made with "whole fruit" and assert that commonality is met because: (1) all of the Products were characterized by fruit flavors (i.e. peach, guava, etc.) and displayed pictorial representations of fresh, ripe fruit, and (2) none of them contained an "artificially flavored" disclosure. [Doc. No. 95 at 3.] Plaintiffs argue that the fact that some Product labels contain additional deceptive advertising, such as the "100% Natural" statement, "does not change . . . that the Products were mislabeled and deceptive during the entire Class Period." [*Id.* at 3-4.] Plaintiffs claim that common questions include whether the above representations were likely to deceive; whether Defendants represented that the Products only contained natural flavors; whether that representation was material to purchasers; whether that representation was truthful; and what the proper method for calculating damages is. [Doc. No. 75-1 at 17.]

As a threshold matter, because Plaintiffs concede that the Mango Nectar Product never contained dl-malic acid during the class period, the Court removes Mango Nectar from the class definitions of "Products." [Doc No. 95 at 4 n.3.] Thus, all remaining Products (Kern's Guava Nectar, Apricot Nectar, and Peach Nectar) allegedly contained dl-malic acid, were characterized by fruit flavors, displayed pictorial representations of fresh, ripe fruit, and did not contain an "artificially flavored" disclosure on the front label.

### a.    UCL and FAL Claims

The UCL prohibits "unfair competition," which it defines to include "any unlawful, unfair or fraudulent business act or practices." CAL. BUS. & PROF. CODE § 17200. By proscribing any "unlawful" business practice, the statute effectively "borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal citations omitted). The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." CAL. BUS. & PROF. CODE § 17500. "[T]o state a claim under the

8

UCL or the FAL based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)).

Claims brought under the UCL and FAL are governed by the "reasonable consumer" test, which asks whether a reasonable consumer is likely to be deceived by the challenged advertisement or label. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). The "reasonable consumer" test requires more than a mere possibility that the advertisement or label "be misunderstood by some few consumers viewing it in an unreasonable manner"; rather, it requires "that a significant portion of the general consumer public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal citations omitted).

To establish commonality for their UCL and FAL claims, Plaintiffs must point to common evidence that could establish the alleged misrepresentations' likelihood of deception on a classwide basis. *See Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 548 (N.D. Cal. 2021) ("[W]here, as here, the plaintiff has not shown that the alleged misrepresentations could be deceptive as a matter of law (as may be the case with labels of origin), the plaintiff must point to common evidence other than the alleged misrepresentations themselves to establish that the question of likelihood of deception can be resolved on a classwide basis."). While surveys and expert testimony regarding consumer expectations are not required, "a few isolated examples of actual deception are insufficient." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (internal quotation marks omitted).

Plaintiffs state that their "common contention is capable of classwide resolution" because "Defendants' liability as to all class members will be determined by answering the same questions." [Doc. No. 75-1 at 16.] Beyond their conclusory statement that commonality exists, Plaintiffs point to no evidence demonstrating that "the question of likelihood of deception can be resolved on a classwide basis." *Vizcarra*, 339 F.R.D. at 548.

Although not suggested by Plaintiffs, the only evidence before the Court that could potentially serve as common proof of likelihood of deception is the report of Plaintiff's expert, Dr. Belch.  [Doc. No. 75-10.]  Dr. Belch assessed the importance consumers placed on certain attributes when deciding whether to purchase juice-based beverages, and the effect of an "artificially flavored" label on consumers' willingness to pay for such a product.  [*Id.* at 15-16.]  He then concluded that consumers are willing to pay approximately 29% more for a Kern's product with a retail price of 99 cents that does not indicate it contains artificial flavors, and 30% less for a product that contains artificial flavors.  [*Id.*]

The crux of Plaintiffs' UCL and FAL claims is whether a reasonable consumer is likely to be deceived by the Products' front labels (specifically, the labels' failure to disclose artificial flavoring) – not what consumers would be willing to pay for such a product.  Dr. Belch's survey does not assess whether consumers, when considering the Products' front labels, would be led to believe that the Products do not contain artificial flavors or contain only natural flavors.  Therefore, Dr. Belch's survey results do not speak to the likelihood of deception stemming from the Products' front labels and cannot establish such likelihood of deception on a classwide basis.  *See Vizcarra*, 339 F.R.D. at 548 (finding consumer survey could not constitute common proof of likelihood of deception where survey did not specifically test the effect of the alleged misrepresentation on consumers' expectations or beliefs); *cf. Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) (finding consumer survey constituted common evidence of likelihood of deception where survey tested misrepresentation's effect on consumers' understanding of the product's contents).

Moreover, not even Plaintiffs' anecdotal experiences with the Products show that they were actually deceived by the alleged common misrepresentations.  Every named Plaintiff testified in their deposition that they were initially influenced to purchase the Products, at least in part, by the Products' representations that they were "100% natural" [Doc. No. 84-24 at 10], "made with whole fruit" [Doc. No. 84-23 at 29, 39], "100 percent natural fruits" [Doc. No. 84-20 at 36], or "100% fruit" [Doc. No. 87-8 at 74].  However,

Plaintiffs removed these affirmative representations from their asserted common contentions, stating that such representations are merely "additional deceptive advertising" beyond the common misrepresentation at issue (i.e., the failure to disclose artificial flavoring).  [Doc. No. 95 at 3.]  Plaintiffs' testimony thus does not establish that they were deceived by a failure to disclose artificial flavoring on the Products' front labels.

Plaintiffs have not pointed to any common evidence capable of resolving on a classwide basis whether a reasonable consumer would have been deceived by the Products' alleged mislabeling.  *See Grodzitsky v. Am. Honda Motor Co., Inc.*, 957 F.3d 979, 986-87 (9th Cir. 2020) (finding commonality not satisfied where proffered expert "did not and could not" demonstrate common harm among class members and "remaining evidence consisted solely of highly individualized complaints").  Accordingly, the commonality requirement is not met as to Plaintiffs' claims under the UCL and FAL, and class certification must be denied as to those claims.

### b.  CLRA Claim

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  CAL. CIV. CODE § 1770.  CLRA claims are governed by the "reasonable consumer" standard described above.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  A CLRA plaintiff must also show "not only that a defendant's conduct was deceptive but that the deception caused them harm."  *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 94 (2009).

In a class action, although each class member must have an actual injury caused by the allegedly unlawful practice, such causation may be established on a class-wide basis by showing materiality.  *Id.* at 95.  A misrepresentation is deemed "material" if a reasonable person "would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 332 (2011) (internal quotation marks and citation omitted).  "If the trial court finds that material misrepresentations have been made to the entire class . . . Plaintiffs may satisfy their burden of showing causation as to each by showing materiality as to all."  *Vioxx*, 103

Cal. Rptr. 3d at 95 (internal citations omitted).  However, "if the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *Id.* (citing *Caro v. Procter & Gamble Co., supra*, 22 Cal. Rptr. 2d 419 (1993)).

First, claims under the UCL, FAL, and CLRA all require that the plaintiff show that the defendant's representations were deceptive or misleading to a reasonable consumer. *See Hilsley*, 2018 WL 6300479, at *11 ("Plaintiff's UCL, FAL and CLRA claims depend on whether the labels are 'unlawful, unfair, deceptive, or misleading to *reasonable* consumers,' an objective standard.") (internal citations omitted).  "As such, whether or not Defendants' claims are misleading is an objective, classwide inquiry for purposes of the UCL, FAL and the CLRA." *Forcellati v. Hyland's, Inc.*, No. CV 12–1983–GHK (MRWx), 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014).  As discussed above, Plaintiffs have not established commonality as to whether the Products' alleged misrepresentations were likely to deceive a reasonable consumer.  Because Plaintiffs cannot point to any common evidence that could establish likelihood of deception, they cannot satisfy the commonality requirement as to their CLRA claim either.  *Cf. Milan v. Clif Bar & Co.*, No. 18-cv-02354-JD, 2021 WL 4427427, at *4 (N.D. Cal. Sep. 27, 2021) (finding commonality established where "Plaintiffs have also demonstrated that common evidence, such as consumer surveys and Clif Bar's internal documents, will be used to prove falsity, deception, and materiality").

As for materiality, Plaintiffs argue in their reply to Vilore's opposition that "because all class members were exposed to the deceptive product labels, materiality can be demonstrated on a class-wide basis."  [Doc. No. 96 at 4.]  Plaintiffs misstate the relevant law.  Mere exposure to a representation does not make it material; rather, a representation is material if a reasonable consumer "would attach importance to [the representation's] existence or nonexistence in determining his choice of action in the transaction in question." *Kwikset*, 51 Cal. 4th at 332.  Nevertheless, Plaintiffs argue in their reply brief that Dr. Belch's survey results show most consumers "find the presence of artificial flavors

important," which they presumably suggest is common evidence of materiality. [Doc. No. 96 at 4.]

Plaintiffs refer to the portion of Dr. Belch's consumer survey asking participants to indicate the importance of various attributes considered when purchasing a fruit juice-based beverage, on a scale of 1 to 5 from "not at all" to "extremely" important. [Doc. No. 75-10 at 8.] The mean scores for California participants were 3.7 for "no artificial flavors" and 4.0 for "all natural ingredients," and the national participants' scores were similar. [*Id.* at 8-9.] However, the survey did not test whether these specific Products' failure to disclose artificial flavoring would have been material to the participants' purchasing decision. *See Jones v. ConAgra Foods, Inc.*, No. C 12–01633 CRB, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014) (rejecting expert's opinion as common evidence of materiality where expert "did not explain *how* the challenged statements . . . were a factor in any consumer's purchasing decisions" and "did not survey any customers to assess whether the challenged statements were in fact material to their purchases, as opposed to, or in addition to, price, promotions, retail positioning, taste, texture, or brand recognition"); *see also Vizcarra*, 339 F.R.D. at 550 (finding no common evidence of materiality where expert did not explain how the defendant's specific representations "would impact a consumer's decision to purchase the ice cream at issue"). Consumers' general perceptions of juice-based beverages' attributes cannot serve as common evidence that these particular Products' labels were material to class members' purchasing decisions.

Dr. Belch's survey also asked participants to provide their opinion of an average retail price of 99 cents for a Kern's juice-based beverage and how likely they would be to purchase Kern's products. [Doc. No. 75-10 at 7-8.] The survey showed participants a mock Kern's can with an "Artificially Flavored" label and asked how the product's artificial flavoring would influence the price they were willing to pay for it. [*Id.* at 8, 14.] Of those who viewed the "Artificially Flavored" can, only 12.8% of California participants and 15.5% of all participants indicated that they would not purchase Kern's juice-based beverages. [*Id.* at 14.] Moreover, the question posed did not isolate the artificial flavoring

as the participant's reason for not purchasing Kern's beverages. [*Id.* at 14: "Q24_Experiment: How would the fact that the product contains artificial flavoring impact the price you would be willing to pay for a can of Kern's fruit juice based beverage?" Answer: "I would not purchase Kern's fruit juice based beverage."] These results provide no way of knowing what motivated the few participants who indicated they "would not purchase Kern's fruit juice based beverage," and thus do not demonstrate whether the presence of artificial flavoring was in fact material to their decision. *See Jones*, 2014 WL 2702726, at *15 ("... as opposed to, or in addition to, price, promotions, retail positioning, taste, texture, or brand recognition").

Dr. Belch's survey results cannot constitute common proof that the alleged misrepresentations made to the entire class (i.e., the failure to disclose artificial flavoring) would be material to a reasonable consumer in determining whether to purchase the Products. Accordingly, commonality is not established as to Plaintiffs' CLRA claim, and class certification on that claim must be denied.

### c.   Breach of Warranty Claims

### i.   Breach of Express Warranty

To prevail on a breach of express warranty claim under California Commercial Code § 2313, the plaintiff must establish that: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (internal citations omitted). Proof of reliance on specific promises or representations is not required. *Id.* "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." CAL. COM. CODE § 2313(1)(b).

"As with California's consumer protection statutes . . . class treatment of breach of express warranty claims is only appropriate if plaintiffs can demonstrate that the alleged misrepresentation would have been material to a reasonable consumer." *ConAgra Foods*, 90 F. Supp. 3d at 985. For the reasons discussed above, Plaintiffs have not demonstrated

that materiality of the alleged misrepresentations can be proven on a classwide basis. Accordingly, commonality is not established as to the breach of express warranty claim, and class certification must be denied.

### ii.       Breach of Implied Warranty

California law implies a warranty of merchantability that "goods are fit for ordinary purposes for which such goods are used," thereby providing "for a minimum level of quality." *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*, 532 F. Supp. 3d 911, 919 (C.D. Cal. 2021) (internal citations and quotation marks omitted); CAL. COM. CODE § 2314(1).  For goods to be merchantable, at a minimum, they must be adequately contained, packaged, and labeled with the contents conforming "to the promises, or affirmations of fact made on the container or label." CAL. COM. CODE § 2314(2)(f).  A plaintiff bringing an action for breach of an implied warranty must establish that the defendant's goods breached an implied warranty of merchantability, and that the plaintiff was in vertical privity with the defendant. *See Angiano*, 532 F. Supp. 3d at 920; *see also ConAgra Foods*, 90 F. Supp. 3d at 986.

All named Plaintiffs allegedly purchased the Products in retail stores, rather than directly from Defendants.  [Doc. No. 75-1 at 12-13.]  However, vertical privity requires that the plaintiff and defendant be "in adjoining links of the distribution chain," such that "an end consumer . . . who buys from a retailer is not in [vertical] privity with a manufacturer." *Clemens*, 534 F.3d at 1023 (citing *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988)).  Each class member will be individually required to demonstrate that he or she is in vertical privity with Defendants to establish a breach of implied warranty claim.  Accordingly, an essential element of Plaintiffs' claim is not capable of classwide resolution. *See ConAgra Foods*, 90 F. Supp. 3d at 987; *see also Allen v. Hyland's Inc.*, 300 F.R.D. 643, 670 (C.D. Cal. 2014) ("Plaintiffs have not adequately demonstrated that common issues of fact and law predominate with respect to this claim, given that each class member will be required to demonstrate that he or she is in vertical

privity with Defendants.").  As commonality is not met, class certification must be denied as to this claim as well.

### d.    Negligent Misrepresentation Claim

Under California law, a plaintiff bringing a negligent misrepresentation claim must allege: (1) a misrepresentation of a material fact; (2) made without reasonable grounds for believing it to be true; (3) made with the intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *See SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 154 (2018); *see also Ragland v. U.S. Bank Nat'l Ass'n,* 209 Cal. App. 4th 182, 196 (2012).  Moreover, the plaintiff must point to a "positive assertion" of fact by the defendant, as an "implied assertion or representation is not enough."  *See Wilson v. Century 21 Great Western Realty*, 15 Cal. App. 4th 298, 306 (1993); *see also Hernandez v. Select Portfolio Serv. Inc.*, No. CV 15-01896 MMM (AJWx), 2015 WL 12658459, at *10 (C.D. Cal. Oct. 29, 2015).

Here, Plaintiffs have not established a common "positive assertion" viewed by all putative class members when purchasing the Products.  Plaintiffs indicate that some cans distributed by Vilore had a "100% Natural" representation, some distributed by ACC had a "Made with Whole Fruit" representation, and others had neither.  [Doc. No. 49 ¶¶ 33, 37.]  Moreover, Plaintiffs explicitly excluded the "100% Natural" and "Made with Whole Fruit" representations from their asserted common contentions of fact for purposes of class certification.  [Doc. No. 95 at 3-4.]  Because Plaintiffs cannot point to a "positive" misrepresentation of a material fact common to all class members, commonality is not satisfied as to an essential element of Plaintiffs' negligent misrepresentation claim. Accordingly, class certification as to this claim must be denied.

### 3.    Typicality and Adequacy

The Court need not address the remaining Rule 23(a) requirements after finding a lack of commonality on all claims.  *See Davidson v. O-Reilly Auto Enter., LLC*, 968 F.3d 955, 968 (9th Cir. 2020) ("[W]e conclude that the district court did not abuse its discretion in denying Davidson's motion for class certification because Davidson did not establish

commonality."); *see also Moussouris v. Microsoft Corp.*, 799 Fed. Appx. 459, 461 (9th Cir. 2019) (a "proposed class must satisfy all of the Rule 23(a) requirements"). Nevertheless, the Court briefly discusses the typicality factor as it relates to Plaintiffs' request to certify a Nationwide Class.

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis*, 657 F.3d at 984; *see also* FED. R. CIV. P. 23(a)(3). "[W]hen determining typicality, the Court focuses on the defendant's conduct and the plaintiff's legal theory, not the specific facts from which the claim arises." *Allen v. Similasan Corp.*, 306 F.R.D. 635, 645 (S.D. Cal. 2015) (citing *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Thus, "typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons*, 754 F.3d at 685 (citing *Hanon*, 976 F.2d at 508).

Plaintiffs' breach of warranty claims state that they are brought "on behalf of the California Class and all states with substantially similar laws." [Doc. No. 49 ¶¶ 174-205.] The TAC also states that Plaintiffs' final cause of action for negligent misrepresentation is brought against only ACC under California Civil Code sections 1709-1710 "and the common law of all states." [*Id.* at 29.] Plaintiffs seek certification of a Nationwide Class with respect to these three claims. [Doc. No. 75-1 at 11.] Although Plaintiffs' claims, as drafted, appear to be brought under the laws of any states with "substantially similar" common law, Plaintiffs later assert in their reply brief that they "do not attempt to sue under the laws of other states" and "propose applying California law to the nationwide class." [Doc. No. 95 at 2.] ACC, on the other hand, argues that the issue with Plaintiffs' Nationwide Class is that the representative Plaintiffs lack "standing to sue under the laws

of other states or for any person that is outside of the State of California." [Doc. No. 84 at 17.]

Plaintiffs do not raise the argument that California law should apply to the Nationwide Class until their reply brief. [Doc. No. 95 at 2.] In their motion for certification, Plaintiffs did not address whether California law may be applied to the Nationwide Class under California's choice of law rules or explain California's connection to out-of-state class members' claims. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589-90 (9th Cir. 2012) ("Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member.") (internal quotation marks omitted); *see also Rutledge v. Hewlett-Packard Co.*, 190 Cal. Rptr. 3d 411, 430 (2015) ("A nationwide class is proper under constitutional law when a state has significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [forum] is not arbitrary or unfair.") (internal quotation marks omitted). The Court therefore declines to address this undeveloped choice of law argument and treats Plaintiffs' three Nationwide class claims as brought under the common law of all states. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Although ACC argues that the Nationwide Class presents standing issues, the Ninth Circuit has held that "any issues regarding the relationship between the class representative and the passive class members – such as dissimilarity in injuries suffered – are relevant only to class certification, not to standing." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (internal citations omitted). "Stated differently, representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Id.* (internal quotation marks and citation omitted). Accordingly, the proper analysis is

whether the representative Plaintiffs, who are all California residents and purchased the Products solely in California, have claims that are typical of a Nationwide Class under Rule 23(a)(3).  The Court finds that they do not.

Plaintiffs assert that "they and all class members were exposed to the same misleading claims and omissions, were influenced by those claims, and were injured in the same manner."[8]  [Doc. No. 75-1 at 18.]  However, even if all putative Nationwide Class members purchased the same Products with the same label, their claims will presumably arise under the consumer protection laws of the states where their purchases were made. *See Mazza*, 666 F.3d at 594 (finding that if California law did not apply under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place").  The named representatives here are all residents of California and purchased the Products in California.  [Doc. No. 49 ¶¶ 29-32.]  Their claims are therefore governed by California consumer protection laws and cannot be "typical" of claims arising under other undefined states' laws that may differ in material ways.  *See Young v. Neurobrands, LLC*, No. 18-cv-5907-JSW, 2020 WL 11762212, at *9 (N.D. Cal. Oct. 15, 2020) ("[I]t is apparent to this Court that some material differences exist between the laws of different states with regard to Plaintiffs' common law claims for . . . negligent misrepresentation, and breach of express and implied warranties."); *see also Mazza*, 666 F.3d at 591 (finding that "at least some differences . . . [between California and 43 other states' consumer protection laws] are material" where, for example, "the California [consumer protection] laws at issue here have no scienter requirement, whereas many other states' consumer protection statutes do require scienter" and "California also requires named class plaintiffs to demonstrate reliance, while some other states' consumer protection statutes do not").  Without some demonstration

---

[8] Plaintiffs cite to Dr. Belch's expert report as evidence that "consumers are highly likely to be influenced by these exact misleading claims and omissions," which the Court has already discredited as evidence of such.  [Doc. No. 75-1 at 18.]

from Plaintiffs as to how their claims are typical of or "substantially similar" to claims under other states' laws, the Court cannot assume that typicality exists.

Because the named representatives' claims may involve legal theories that are materially different from the claims of Nationwide Class members, Plaintiffs have not demonstrated that their claims are typical of those of the Nationwide Class under Rule 23(a)(3). *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) ("In determining whether typicality is met, the focus should be on the defendants' conduct and the plaintiffs' legal theory, not the injury caused to the plaintiff.") (citing *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).  Accordingly, Plaintiffs' final three claims brought on behalf of the Nationwide Class do not satisfy the typicality requirement under Rule 23(a), and certification as to the Nationwide Class must be denied.

## B.   Rule 23(b) Requirements

In addition to meeting the prerequisites of Rule 23(a), the parties seeking class certification must also show that the action is appropriate under Rule 23(b)(1), (2), or (3). *Amchem Prods.*, 521 U.S. at 614.  However, class certification is only proper if the Court is satisfied that Rule 23(a)'s prerequisites have been met.  *See Dukes*, 564 U.S. at 350-51 ("[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied' . . . 'Actual, not presumed, conformance with Rule 23(a) remains . . . indispensable.'") (quoting *Falcon*, 457 U.S. at 161).  Because Plaintiffs have failed to demonstrate that Rule 23(a)'s prerequisites are met as to either their California or Nationwide Class, class certification must be denied, and the Court need not analyze Plaintiffs' arguments for certification under Rule 23(b)(2) or 23(b)(3).

## III.   MOTIONS TO SEAL

The Court previously denied Plaintiffs' [Doc. Nos. 77, 93] and Vilore's motions to file documents under seal [Doc. Nos. 85, 98], but invited Defendants to file supplemental briefing as to why particular documents offered in support of the parties' class certification briefing should be filed under seal.  [Doc. No. 104.]  Both ACC [Doc. No. 107] and Vilore [Doc. No. 109] filed supplemental briefing in response to the Court's order.  The Court

does not find the documents Defendants seek to file under seal relevant to its consideration of the underlying motion and does not cite to or rely on the documents in its order herein. Accordingly, the motions to seal are **DENIED AS MOOT**.

### IV.   CONCLUSION

Because Plaintiffs have not satisfied all requirements of Rule 23(a), the Court **DENIES WITHOUT PREJUDICE** the Motion for Class Certification.  [Doc. No. 75.] For the reasons discussed above, the Court also **DENIES AS MOOT** Vilore's motion to exclude the expert reports of Dr. Belch and Charlene Podlipna.  [Doc. No. 97.]

It is **SO ORDERED.**

Dated:  April 8, 2022

_____
Honorable Linda Lopez
United States District Judge